JDN

**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Robert Joseph Benge,                    )    No. CV 04-1687-PHX-DGC (CRP)
                                        )
          Plaintiff,                    )    **ORDER**
                                        )
vs.                                     )
                                        )
Joseph Scalzo, et al.,                  )
                                        )
          Defendants.                   )
                                        )
_____ )

    Plaintiff Joseph Benge brought this civil rights action under § 1983 against Maricopa County Correctional Health Services (CHS); Dr. Joseph Scalzo, director of CHS; and Nurse Leonard Sines (Doc. #20).  Plaintiff is represented by counsel.  Before the Court is Defendants' Motion for Summary Judgment (Doc. #56), which has been fully briefed by the parties (Doc. ##58, 60).

    The Court will grant the motion in part and deny it in part.  The sole remaining claim will be the Eighth Amendment individual-capacity claim against Sines.  All other counts and Defendants will be dismissed.

**I.    Background Facts**

    The crux of Plaintiff's claim is that Defendants acted with deliberate indifference to his medical needs when, upon his transfer from the state prison facility to the county jail, they refused to continue his treatment and medication regime for psychiatric conditions (Doc. #20 ¶¶ 19-52).  Count I sets forth a claim against Sines and Scalzo in their individual

capacities for violation of the Eighth Amendment (id. ¶¶ 19-26).  Count II alleges that Sines and Scalzo, in their individual capacities, violated the Fourteenth Amendment (id. ¶¶ 27-34). Count III is against all three Defendants in both their individual and official capacities for violation of the Eighth Amendment (id. ¶¶ 35-43).  And Count IV is also against all three Defendants in both capacities for violation of the Fourteenth Amendment (id. ¶¶ 44-52).

The following facts are derived from Plaintiff's First Amended Complaint (Doc. #20), Defendants' Statement of Facts (DSOF) (Doc. #57), and Plaintiff's Statement of Facts (PSOF) (Doc. #59):

1.   Plaintiff was imprisoned in the Arizona Department of Corrections (ADC) beginning in June 1998; he was eventually transferred to the Arizona State Prison Complex (ASPC)-Lewis facility (Doc. #20 ¶ 6).

2.   The ADC physicians prescribed medication and treated Plaintiff for severe depression and psychiatric conditions that caused him to hear voices (id. ¶¶ 7-8).

3. On September 3, 2002, Plaintiff was transferred from ASPC-Lewis to the Madison Street Jail; upon his transfer, his treatment and medications were discontinued (id. ¶¶ 9-10).

4.   From September to November 2002, Plaintiff made several requests to see a psychiatrist.  His requests were refused by jail officials because he sought to discuss his medical symptoms with a physician only (id. ¶ 10).

5.   On October 16, 2002, Plaintiff submitted a CHS Inmate Medical Request to be seen by psychiatric services (PSOF ¶ 33).  He subsequently filed a grievance, which also requested that he be seen by psychiatric services (Doc. #20 ¶ 12; DSOF ¶ 8).

6.  Plaintiff was examined by Sines on November 29, 2002 (PSOF ¶ 34; DSOF ¶ 8).

7.  Sines, a psychiatric nurse (DSOF ¶ 4), did not have authority to write prescriptions; he could only recommend medications to physicians after conducting an assessment of the patient (DSOF ¶ 7).

**Plaintiff's Contentions Re: the November 29, 2002 Assessment**

8.   Sines represented to Plaintiff that he was a psychiatrist licensed to prescribe medication (Doc. #20 ¶ 12).

9.   During the assessment, Plaintiff offered Sines the names of previous providers, medications, and treatment through several records, but Sines, for the most part, refused to review them (PSOF ¶ 35).

10.  Plaintiff informed Sines that he had been housed at ADC before transfer to the Madison Street Jail (id. ¶ 36).

11. Plaintiff informed Sines of the various medications he had been taking while at ADC (id. ¶ 37).

12. Plaintiff told Sines about his past suicidal tendencies and expressed his desire to continue medication (id. ¶ 38).

13. Sines told Plaintiff that his symptoms were a "normal response to the jail environment" (Doc. #20 ¶ 13).

**Defendants' Contentions Re: the November 29, 2002 Assessment**

14. There was nothing in the CHS chart Sines reviewed that indicated any suicide ideation or need for psychiatric care. Nor did Plaintiff report any suicide ideation or need for psychiatric care during the assessment with Sines (DSOF ¶¶ 16, 18).

15. Plaintiff told Sines that he had no need for psychiatric care (id. ¶ 21).

16. Because Plaintiff was unable to give Sines the names of previous providers, medications, or treatment, Sines could not verify records and treatment history (id. ¶ 11).

17. Sines did not know that Plaintiff had come from the ADC and, therefore, did not know what medications Plaintiff had been taking before his arrival at the Madison Jail (id. ¶ 13).

18. Plaintiff told Sines that he had been diagnosed with a personality disorder with antisocial traits (id. ¶ 10).

19. Sines concluded that Plaintiff's insight and judgment were poor; that Plaintiff reported inaccurate, questionable symptoms; and that his complaints were manipulative (id.). Sines believed that Plaintiff was trying to get Trazadone (id.).

20. In Sines' experience, it was common for inmates to manipulate the system for medications after coming off the streets and losing their access to drugs (id. ¶ 15).

21. Because Plaintiff had been on Elavil – an antidepressant – for a couple days, Sines did not want to recommend any other drug until the effects of Elavil were determined (id. ¶ 12).

**Post November 29, 2002 Assessment**

22. Sines did not arrange for Plaintiff to get medication or see a physician (PSOF ¶ 41).

23. Plaintiff's symptoms worsened and, in March 2003, he attempted suicide (Doc. #20 ¶ 15; PSOF ¶ 46).

24. Plaintiff's chart at CHS does not reveal a suicide attempt while at the jail (DSOF ¶ 16).

25. Due to his untreated psychiatric conditions, Plaintiff chose to go to trial without the aid of an attorney. As a result, he received a longer sentence (Doc. #20 ¶ 16; PSOF ¶ 47).

1
2
        26. Plaintiff continued to request psychiatric care from a licensed psychiatric provider by filing CHS Inmate Medical Requests on December 18, 2002, and November 17, 2003 (PSOF ¶ 42).

3
4
        27. Plaintiff's November 17, 2003 Inmate Medical Request was addressed to Dr. Scalzo (id. ¶ 43).

5
6
        28. Plaintiff did not see a psychiatrist until December 18, 2003 – 423 days after his October 16, 2002 request (PSOF ¶ 44). This psychiatrist prescribed to Plaintiff the same medications he had been taking at ADC (id. ¶ 45).

7
## II.    Motion for Summary Judgment

8
9
10
11
12
13
14
        Scalzo and CHS move for summary judgment on the grounds that (1) they did not act with deliberate indifference and (2) there is no vicariously liability (Doc. #56 at 6). Scalzo argues that he never treated Plaintiff and thus did not have a patient-physician relationship with him (id. at 7). Scalzo further argues that there is no evidence that he created an unconstitutional policy that harmed Plaintiff or that he directed anyone under his supervision to violate Plaintiff's rights (id.). Scalzo and CHS maintain that they cannot be liable for any acts or omissions by Sines (id.).

15
16
17
        Sines argues for summary judgment on the ground that his refusal to recommend medications was appropriate and Plaintiff's disagreement over treatment does not rise to a constitutional claim (id. at 7).

18
19
20
        All Defendants contend that Plaintiff did not show the physical injury required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(e) (id. at 11-12).

21
22
23
24
25
26
        In support of their motion, Defendants submit excerpts from Sines' deposition (Doc. #57, Exs. 1-17, 19-22), which in turn are supported by a copy of Sines' resume (id., Ex. 3A); a copy of the November 2002 CHS medical record (id., Ex. 8A); a copy of Plaintiff's September 5, 2002 Intake Assessment (id., Ex. 20A); a copy of Plaintiff's November 20, 2003 medical record from an exam at the Maricopa Medical Center (id., Ex. 22A); and excerpts from Plaintiff's deposition (id., Exs. 18, 23-30).

27
28
        In his opposition, Plaintiff contends that genuine issues of material fact exist whether Defendants acted with deliberate indifference and, specifically, whether Defendants had the

requisite knowledge of the substantial risk of serious harm to Plaintiff (Doc. #58). Plaintiff argues that he provided Sines information about his suicidal tendencies and past mental health history; thus, Sines knew of the risk of harm to Plaintiff yet disregarded it (id. at 6). Plaintiff asserts that Scalzo condoned a policy that allowed nurses to make the ultimate decision about prisoners' mental health care, which prohibited access to psychiatrists absent the approval of a nurse (id. at 5). Plaintiff argues that in promulgating this policy, Scalzo knew that medical care would be denied or delayed and, in fact, it caused Plaintiff's medical care to be denied and delayed for 423 days (id. at 5-6).

To support his opposition, Plaintiff proffers excerpts from his deposition (Doc. #59, Ex. A), a copy of his November 20, 2003 medical record from the Maricopa Medical Center (id., Ex. B), a copy of the June 28, 2002 Transfer Summary/Continuity of Care form (id., Ex. C), a copy of Defendants' responses to Plaintiff's Request for Admissions (id., Ex. D), an excerpt from Sines' deposition (id., Ex. E), and a copy of Plaintiff's November 17, 2003 CHS Inmate Medical Request to Scalzo (id., Ex. F).

In reply, Defendants argue that Plaintiff's current assertions and personal opinions – which they claim are not consistent with his medical records from 2002 and 2003 – are insufficient to defeat their summary judgment motion (Doc. #60 at 2-3). Defendants reiterate that Plaintiff cannot demonstrate that they are liable under § 1983 or that he has suffered injury as required under § 1997e(e). Finally, they reassert that Plaintiff's claim against Sines cannot survive summary judgment because it concerns a course-of-treatment decision, which is not actionable under § 1983 (id.).

## III.    Legal Standard

### A.    Summary Judgment

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see

also <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323; <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 819 (9th Cir. 1995); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968).  But conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249; <u>Devereaux</u>, 263 F.3d at 1076.

In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party.  <u>Allen v. City of Los Angeles</u>, 66 F.3d 1052, 1056 (9th Cir. 1995).  Thus, any reasonable doubts about the existence of a factual issue should be resolved against the moving party. <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

**B.    Medical Care**

Plaintiff asserts a deliberate indifference claim under both the Eighth and Fourteenth Amendments (Doc. #20).  Convicted prisoners are protected against cruel and unusual punishment by the Eighth Amendment; pretrial detainees derive their rights from the due

process clause of the Fourteenth Amendment, which extends greater protection to those who are not convicted of crimes. <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239, 244 (1983); <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979); <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1187 (9th Cir. 2002). Although at the relevant time, Plaintiff was housed in jail pending trial on a new charge, he was nonetheless a convicted prisoner. As such, his claim arises under the Eighth Amendment.

In order to support a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). Indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Eighth Amendment protection is not limited to physical health; it also applies to mental health. <u>Doty v. County of Lassen</u>, 37 F.3d 540, 546 (9th Cir. 1994) (citing <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1253 (9th Cir. 1982)). Courts have recognized serious mental health needs where inmates were considered suicide risks, attempted suicide, or overdosed on pills. <u>See</u> <u>Steele v. Shah</u>, 87 F.3d 1266, 1268-69 (11th Cir. 1996) (inmate's "feelings of hopelessness and helplessness" after discontinuation of psychotropic drugs made him a potential suicide risk, which constitutes a serious medical need); <u>Torraco v. Maloney</u>, 923 F.2d 231, 235 & n. 4 (1st Cir. 1991) (jury could find serious mental health need based on past suicide attempt, assault on prison official, and overdose on pills).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be

drawn that a substantial risk of harm exists" and actually draws such an inference.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 838 (1994).  Thus, a defendant is liable if he knows that the plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  <u>Id.</u> at 847.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  <u>Id.</u> at 842.

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment.  <u>Broughton v. Cutter Lab</u>, 622 F.2d 458, 460 (9th Cir. 1980).  But a plaintiff need not prove a "complete failure to treat."  <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir. 1989).  Deliberate indifference may be shown when an official denies, delays, or intentionally interferes with treatment or by the way that a medical professional provides care.  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006).  A mere difference of medical opinion, however, is insufficient to establish deliberate indifference.  <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th Cir. 2004).  "To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  <u>Id.</u> (citing <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996)).

**IV.   Analysis**

Counts II and IV assert claims under the Fourteenth Amendment (Doc. #20 at 6, 9).  As stated above, because Plaintiff was a convicted prisoner while housed at the jail, his claims arise under the Eighth Amendment, not the Fourteenth.  Counts II and IV will therefore be dismissed.

The Court will address (1) the Eighth Amendment claims against Sines and Scalzo in their individual capacity (Count I), (2) the Eighth Amendment claims against Defendants in their official capacities (Count III), and (3) the physical injury requirement under the PLRA.

### A.    Sines' Liability in his Individual Capacity

Sines maintains that he was not deliberately indifferent to Plaintiff's mental health needs (Doc. #56 at 8). He argues that he responded to Plaintiff's request to be seen and spent 45 minutes to an hour with Plaintiff (id. at 9-10). Sines claims that during the assessment, Plaintiff did not provide any information about previous providers or medication and he did not inform Sines of his treatment at ADC (Doc. #57, Sines Dep., Ex. 11, 23:14-22; Ex. 13, 24:11-18; Ex. 14, 37:15-18, 51:19-22). Sines further argues that he cannot be liable under § 1983 as a medical provider if he responded to a medical need (Doc. #56 at 11).

Plaintiff disputes several material facts. He testified that he told Sines about his incarceration at ADC; his previous providers, medications, and treatment while in prison; and his past suicidal tendencies and desire to continue medication (Doc. #59, Ex. A, Pl. Dep. 47:15-21, 49:23-50:5, 67:22-68:4, 77:3-79:2).

Defendants urge the Court to weigh the evidence in their favor because they believe the medical records corroborate Sines' deposition testimony and because Plaintiff has a tendency to commit fraud (see Doc. #56 at 11). But weighing the evidence and credibility determinations are not permitted in a summary judgment analysis. Anderson, 477 U.S. at 255. The evidence must be construed in Plaintiff's favor, and all inferences drawn from the underlying facts must be viewed in the light most favorable to Plaintiff. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Applying this standard, the Court concludes that Plaintiff has presented triable issues of fact as to whether Sines was deliberately indifferent to Plaintiff's serious mental health needs.

### 1.    Serious Mental Health Need

There is no dispute that Plaintiff received treatment and medication for his mental health condition while at ADC. This gives rise to at least an inference that his condition remained a serious mental health need upon his transfer to the jail. Sines argues that there

was nothing to suggest that Plaintiff was depressed or suicidal at the jail (DSOF ¶¶ 16, 18), but Plaintiff directly disputes that assertion (Doc. #58 at 5; PSOF ¶¶ 35-38).   Further, Defendants do not deny that upon seeing a psychiatrist in December 2003, Plaintiff was prescribed medication for his mental health condition.   On these facts, a jury could reasonably conclude that Plaintiff suffered from a serious mental health need.

### 2.   Harm From Delay in Treatment

A delay in providing medical treatment does not constitute deliberate indifference unless the delay was harmful.  Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (internal citation omitted); see also Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (Eighth Amendment is only violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case").  Sines contends that there exists no record of harm or suicide attempts and points to Plaintiff's admission that he never told medical or jail staff about overdosing (Doc. #57, Ex. 25, Pl. Dep. 38:16-19).  But Plaintiff testified that when he was treated for throwing-up after he overdosed March 2003, he did not want to tell medical staff the reason he was sick because he feared being placed in a restraint chair, which was often done with suicidal inmates (id., 38:3-9).  He testified that after his medication was stopped "cold turkey" upon transfer to the jail, over the next few weeks he became very depressed and then attempted to take his life (Doc. #59, Ex. A, Pl. Dep. 42:20-22, 43:24-44:9).  He testified that he heard voices he believed to be his mother's and God's, and he described his condition as "almost like trauma" (id. 52:1-3).  Plaintiff testified that in his condition, he decided to follow these voices and reject plea offers and represent himself in his criminal trial (id. 52:7-16).  Construing this evidence in Plaintiff's favor, the lack of treatment caused him to suffer, led to a suicide attempt, and severely affected his decision-making abilities.  This is sufficient to raise a material dispute on this prong of the Eighth Amendment claim.

### 3.    Deliberate Indifference

This question is not a dispute over the course of treatment, as Defendants argue (see Doc. #56 at 10).  Rather, the dispute concerns the information that formed the basis of Sines' decision not to recommend medication or a visit with a psychiatrist.  Plaintiff's testimony suggests that Sines ignored pertinent medical information – Plaintiff's prior ADC treatment and medication regime.  Given Sines' medical training, he would have known the risk to Plaintiff in discontinuing psychiatric medication and treatment.  See Steele, 87 F.3d at 1268-70 (jury could find deliberate indifference where psychiatrist discontinued a transfer prisoner's psychotropic medication without reviewing the prisoner's medical records or consulting the former prison facility medical staff).  Plaintiff has raised a question of fact as to whether Sines acted with deliberate indifference.

Summary judgment on the Eighth Amendment claim in Count I against Sines in his individual capacity will be denied.

### B.    Scalzo's Liability in his Individual Capacity

Scalzo seeks summary judgment on the grounds that he did not treat Plaintiff, there is no evidence that he created or maintained an unconstitutional policy that harmed Plaintiff, and there is no evidence that he directed or condoned the actions of Sines (Doc. #56 at 7).  He further argues that he cannot be held vicariously liable under § 1983 for the actions of Sines simply because he was Sines' supervisor (id.).  In support, Scalzo relies on Plaintiff's admission that Scalzo never treated him and on the absence of anything in the record connecting Scalzo to an unconstitutional policy that damaged Plaintiff (id. & n. 1).

Scalzo's arguments for summary judgment combine defenses to both the individual and official capacity claims against him.  Individual liability hinges upon a defendant's participation in the deprivation of a constitutional right.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).  This participation may involve setting in motion acts that

- 11 -

cause others to inflict constitutional injury.  Id.  In an official-capacity suit, a defendant's liability is connected to the entity's policy or custom that played a part in the violation of federal law.  McRorie v. Shimoda, 795 F.2d 780, 783-84 (9th Cir.1986).

For the Court to hold Scalzo liable in his individual capacity, Plaintiff must demonstrate that (1) Scalzo's "own culpable action or inaction in the training, supervision, or control of his subordinates" caused the constitutional injury; (2) Scalzo "acquiesce[d] in the constitutional deprivations of which [the] complaint is made"; or (3) Scalzo's conduct showed a "reckless or callous indifference to the rights of others."  See Larez, 946 F.2d at 646 (internal citations omitted).  Plaintiff has not made this showing.

In response to Scalzo's assertions that he was not involved in Plaintiff's treatment and did not direct or approve Sines' conduct, Plaintiff points to his November 17, 2003 Inmate Medical Request for psychiatric care, which was specifically addressed to Scalzo (Doc. #59, Ex. F).  Plaintiff contends that with this request Scalzo knew or should have known of the substantial risk of serious harm to Plaintiff if psychiatric care continued to be withheld (Doc. #58 at 6).  In his deposition, Plaintiff stated that he had never seen Scalzo before but that he was "sure [Scalzo] knew what was going on within the jail as far as people being seen and not being seen and not receiving medications, but as far as basically what he did wrong, I feel that he was the top individual and he should be accountable for [ ] his conduct" (Doc. #57, Ex. 29, Pl. Dep. 63:14-22).  Plaintiff does not submit any more specific allegations or evidence to support his claim that Scalzo knew that inmates were denied treatment or medication.  Nor does he demonstrate that Scalzo was directly involved in or even aware of Sines' decision to deny medication or an appointment with a psychiatrist.  Plaintiff's November 2003 request to Scalzo was responded to by CHS personnel, who asked that Plaintiff specify what issues he sought to discuss so that his request could be prioritized (Doc. #59, Ex. F).  Thus, there is no indication that Scalzo ever received the Inmate Medical Request addressed to him.

1    The evidence does not reflect a genuine issue of fact that Scalzo participated in the

2    constitutional violation, that he directed it, or that he showed a "callous indifference" to

3    Plaintiff's right to medical care.  Summary judgment will be granted on the individual-

4    capacity claim against Scalzo in Count I.

5        **C.    Defendants' Liability in their Official Capacities**

6

7        Plaintiff sues CHS, Scalzo, and Sines in their official capacities for violation of his

8    Eighth Amendment rights (Doc. #20 at 7).  CHS is operated by Maricopa County, so the

9    proper defendant is Maricopa County, which is a municipal entity.  A plaintiff may bring a

10   claim against a municipality as a "person" under § 1983.  Monell v. Dep't of Social Servs.,

11   436 U.S. 658 (1978).  Because claims for damages against county officials in their official

12   capacity are effectively claims against the county itself, the individual Defendants are

13   duplicative.  See Brandon v. Holt, 469 U.S. 464, 471-72 (1985).  Thus, the Court will address

14   Plaintiff's official capacity claim against Maricopa County.

15       Plaintiff must establish that (1) he was deprived of a constitutional right and (2) the

16   county had a policy, practice, or custom that (3) amounted to deliberate indifference to the

17   constitutional right and (4) was the "moving force" behind the constitutional violation.  Mabe

18   v. San Bernardino County, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (quoting Van Ort v.

19   Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996)).  Defendants argue that there is no

20   evidence (1) of an unconstitutional policy that harmed Plaintiff or (2) that Scalzo was an

21   official with policy-making authority who directed or ratified Sines' actions (Doc. #56 at 7).

22

23       Plaintiff contends that there is an unconstitutional policy that allows nurses to make

24   the final decisions regarding mental health care and thereby permits them to prohibit

25   prisoners' access to licensed psychiatrists (Doc. #58 at 5).  He asserts that in allowing this

26   policy to continue, Scalzo denied and delayed medical treatment from physicians for inmates

27   (id.).  Plaintiff alleges that in his case, Scalzo allowed for a 423-day delay in mental health

28   treatment (id. at 6).  Plaintiff submits excerpts from Sines' deposition, in which he stated that

1   he was trained to assess prisoner-patients and the ultimate goal of that assessment was to

2   determine if a prisoner needed treatment, medications, or a referral to a doctor (Doc. #59, Ex.

3   E, Sines Dep. 17:2-9).  Sines explained that if, during an assessment, he felt that a patient did

4   not need medication or a doctor referral, then the patient would not get either (id. 17:10-13).

5

6        As set forth above, there is a material dispute over whether there was a constitutional

7   violation when Sines' allegedly disregarded pertinent medical history during his assessment

8   of Plaintiff.  With regard to the second element, Sines' deposition testimony is the only

9   evidence going to whether there was a policy at the jail that prevented prisoners from getting

10   necessary medication or treatment.  Sines refers to his training, which suggests that his

11   assessment of Plaintiff was pursuant to procedures established at the jail for screening

12   patients who requested psychiatric care.

13        Assuming that there existed a policy or custom at the jail that required that nurses

14   screen inmates and determine whether they qualified for medication or physician referrals,

15   Plaintiff has not demonstrated that this policy amounted to deliberate indifference to his

16   Eighth Amendment rights and was the moving force behind the violation of those rights.  See

17   Levine v. City of Alameda, --- F.3d ----, 2008 WL 2025011, at *3 (9th Cir. May 13, 2008).

18   Generally, a prison's practice of using nurses, instead of doctors, for primary medical

19   treatment does not constitute a policy or custom that violates the Constitution.  Corley v.

20   Prator, 2007 WL 2908885, at *4 (W.D. La. 2007); Callaway v. Smith County, 991 F. Supp.

21   801, 809 (D. Tex. 1998) (that the plaintiff was seen and treated by nurses and not a physician

22   does not implicate the Constitution).  Within our own circuit, the Idaho District Court granted

23   summary judgment to a jail official accused of refusing to allow the inmate to see one of the

24   jail's physicians.  Hayes v. Smith, 2007 WL 2413023, at *6 (D. Idaho 2007).  The district

25   court found that there was a physician's assistant available to see the inmate and that the

26   inmate was not entitled to select the medical care provider of his choice.  Id.  Here, Plaintiff

27   fails to present any legal argument showing that a policy that nurses instead of doctors treat

28

and screen patients is unconstitutional.

Moreover, according to Plaintiff's own allegations, Sines' indifference was not caused by a policy that called for nurses to screen inmates. Sines' alleged indifference was independent and intentional – he refused to consider the pertinent medical history. Unconstitutional discretionary actions of an employee do not impose liability on the municipal entity under § 1983. See Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) ("[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability")). And there is nothing to suggest that Sines had policy-making authority such that his actions were part of an official policy. See Levine, 2008 WL 2025011, at *3. Finally, Plaintiff fails to demonstrate that Scalzo or any other official with policy-making authority approved Sines' allegedly unconstitutional conduct. See Gillette, 979 F.2d at 1347-38 (ratification by a policymaker of a subordinate's decision and the basis for it may give rise to municipal liability).

Without evidence sufficient to establish the last two elements – an unconstitutional policy or custom that was the moving force behind the violation – Plaintiff's allegations only amount to a respondeat superior claim. A defendant cannot be held liable under § 1983 on a respondeat superior or vicarious liability basis. Monell, 436 U.S. at 693-94. Therefore, summary judgment will be granted on Count III.

**D.   Physical Injury**

Defendants contend that Plaintiff failed to show physical injury as required under § 1997e(e) of the PLRA (Doc. #56 at 11-12). The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002).

- 15 -

1    In <u>Oliver</u>, the Ninth Circuit found that back and leg pain, a painful canker sore, and

2 undefined injuries from an assault by another prisoner were not more than *de minimis*. Id.

3 at 629. Here, Defendants' assertion that Plaintiff incurred no injury is based on their own

4 version of the facts (Doc. #56 at 12). The Court finds that Plaintiff's alleged injuries –

5 psychiatric conditions left untreated for over a year and a suicide attempt – are more than *de*

6 *minimis*.

7    Even absent physical injury, a prisoner is entitled to seek compensatory, nominal, and

8 punitive damages premised on violations of constitutional rights. <u>Oliver</u>, 289 F.3d at 629-30.

9 In the remaining claim against Sines, Plaintiff asserts a violation of his Eighth Amendment

10 rights and requests compensatory and punitive damages (Doc. #20 at 4, 6). Thus, to the

11 extent that Plaintiff has actionable claims for compensatory, nominal, and punitive damages

12 based on violations of his constitutional rights, his claim is not affected by the PLRA.

13 Summary judgment on this basis will be denied.

14

15 **IT IS ORDERED**:

16    (1)   The Clerk of Court must dismiss Counts II and IV.

17

18    (2)   Defendants' Motion for Summary Judgment (Doc. #56) is **denied in part** and

19          **granted in part** as follows:

20          (a)   the motion is denied as to the Eighth Amendment claim in Count I

21                against Defendant Sines in his individual capacity;

22          (b)   the motion is granted as to the Eighth Amendment claim in Count I

23                against Defendant Scalzo in his individual capacity;

24

25          (c)   the motion is granted as to the Eighth Amendment claim in Count III

26                against all Defendants in their official capacity.

27    (3)   The Clerk of Court must dismiss Scalzo and CHS as Defendants.

28

      (4)   The Clerk of Court must dismiss Count III.

- 16 -

1

(5)     The Court will set a Final Pretrial Conference by separate order.

2

DATED this 21st day of May, 2008.

3

4

5

_____

6

David G. Campbell
United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28